USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _12/13/2017_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

EVETTE SIMMONS,                                    :
                                                   :
                          Plaintiff,               :
                                                   :         16-CV-1589 (VEC)
              -against-                             :
                                                   :         MEMORANDUM
CITY OF NEW YORK, DEPUTY INSPECTOR                 :         OPINION AND ORDER
JAMES DONNELLY, DEPUTY INSPECTOR                   :
JEFFREY L. MISHULA, DEPUTY INSPECTOR               :
KENNETH COREY, and INSPECTOR BRIAN                 :
MCGINN,                                            :
                                                   :
                          Defendants.              :

------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

Plaintiff Evette Simmons brings this action against the City of New York and four New York City Police Department ("NYPD" or "the Department") officers: Kenneth Corey, James Donnelly, Brian McGinn, and Jeffrey Mishula. Am. Compl. ¶ 1, Dkt 15. Plaintiff alleges that Defendants discriminated and retaliated against her in violation of 42 U.S.C. § 1981; 42 U.S.C. § 1983; and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Am. Compl. ¶¶ 28-39. Defendants have moved for summary judgment on all claims. Defs.' Notice of Mot., Dkt. 31. For the following reasons, Defendants' motion is GRANTED. The Amended Complaint is DISMISSED with prejudice.

1

# BACKGROUND

Plaintiff, who is African American, worked as a Case Management Nurse, Assignment Level I ("CMN-I") for the NYPD. Defs.' 56.1 Stmt. ¶ 18; Pl.'s 56.1 Resp. ¶ 18.[1] On three occasions in 2013 and 2014, Defendants promoted other CMN-Is to Case Management Nurse, Assignment Level II positions ("CMN-II"). *See* Defs.' 56.1 Stmt. ¶¶ 25, 38, 41-43, 88; Pl.'s 56.1 Resp. ¶¶ 25, 38, 41-43, 88; Dandrige Decl. Ex. H at CMN001016. Plaintiff alleges that Defendants' failure to promote her constitutes racial discrimination. Am Compl. ¶¶ 1, 5. She also alleges that it constitutes retaliation, because the promotions took place after Plaintiff allegedly complained to Defendants about racial discrimination. *Id.* ¶¶ 17-18.

## I.     The Role of NYPD Case Management Nurses

Case Management Nurses ("CMNs" or "Nurses") work in the NYPD's Medical Division, a unit that administers the Department's sick leave policy. Defs.' 56.1 Stmt. ¶¶ 1-3; Pl.'s 56.1

---

[1]      The Court will refer to the parties' filings with the following abbreviations: Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment, Dkt. 36, as "Defs.' Mem. of Law"; Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, Dkt. 44, as "Pl.'s Mem. of Law"; Defendants' Reply Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment, Dkt. 49, as "Defs.' Reply Mem. of Law"; Defendants' Statement of Material Facts Pursuant to Local Civil Rule 56.1, Dkt. 35, as "Defs.' 56.1 Stmt."; Plaintiff's Response Statement of Material Facts that Are in Dispute Pursuant to Local Rule 56.1, Dkt. 51, as "Pl.'s 56.1 Resp."; Declaration of Danielle M. Dandrige in Support of Defendants' Motion for Summary Judgment, Dkt. 32, as "Dandrige Decl."; Declaration of Ambrose Wotorson in Opposition to Defendants' Motion for Summary Judgment, Dkt. 45, as "Wotorson Decl."; Declaration of Evette Simmons, Dkt. 42, as "Simmons Decl."; and Declaration of Lynne Sanderson-Burgess, Dkt. 45-5, as "Sanderson Decl." The Court will refer to Plaintiff's deposition transcript as "Simmons Dep.," docketed as Ex. A of the Dandrige Declaration, Dkt. 32. The Court will refer to the deposition transcripts of Defendants Kenneth Corey, Brian McGinn, and James Donnelly as "Corey Dep.," "McGinn Dep.," and "Donnelly Dep.," which are respectively docketed as Exs. 17, 18, and 19 of the Wotorson Declaration, Dkt. 45.

Defendants invite the Court to disregard Plaintiff's opposition papers and deem Defendants' 56.1 Statement undisputed because Plaintiff submitted her papers six days late. *See* Defs.' Reply Mem. of Law at 2-3. The Court declines to do so. A court may reject untimely opposition filings if the movant can show prejudice. *See, e.g.,* *Murray v. UBS Sec., LLC,* No. 12-CV-5914, 2014 WL 1316472, at *2 n.2 (S.D.N.Y. Apr. 1, 2014); *Posr v. City of New York,* No. 11-CV-986, 2012 WL 4378049, at *6 n.5 (S.D.N.Y. Sept. 25, 2012) (collecting cases). Defendants suffered no prejudice here. Conveniently, Defendants fail to mention that the Court granted them a four-week extension to file their reply brief—curing Plaintiff's tardiness by more than three weeks. *See* July 6, 2017 Order, Dkt. 48. That said, counsel for the Plaintiff is reminded that court filings should be made by the time set by the Court.

Resp. ¶¶ 1-3. In addition, the Medical Division conducts periodic medical assessments and minor procedures such as electrocardiograms ("EKGs"), blood tests, and vaccinations. Defs.' 56.1 Stmt. ¶¶ 6, 8; Pl.'s 56.1 Resp. ¶¶ 6, 8.

The Medical Division employs doctors, psychologists, and Nurses. Defs.' 56.1 Stmt. ¶ 5; Pl.'s 56.1 Resp. ¶ 5. Nurses are classified as either Assignment Level I or Assignment Level II. Defs.' 56.1 Stmt. ¶ 7; Pl.'s 56.1 Resp. ¶ 7. The Level II position earns $2,481 more per year than the Level I position. Defs.' 56.1 Stmt. ¶ 15; Pl.'s 56.1 Resp. ¶ 15. The Medical Division employs approximately seventeen Nurses: fourteen at Level I and three at Level II. Defs.' 56.1 Stmt. ¶¶ 17, 73; Pl.'s 56.1 Resp. ¶¶ 17, 73. The Nurses are assigned throughout the Medical Division's locations in New York City. *See* Defs.' 56.1 Stmt. ¶ 103; Pl.'s 56.1 Resp. ¶ 103.

CMN-Is' duties include interviewing sick officers, contacting their doctors, and performing minor medical procedures. Defs.' 56.1 Stmt. ¶ 8; Pl.'s 56.1 Resp. ¶ 8; Dandrige Decl. Ex. E. CMN-IIs share the same responsibilities and supervise the CMN-Is. Defs.' 56.1 Stmt. ¶¶ 10, 15; Pl.'s 56.1 Resp. ¶¶ 10, 15; Dandrige Decl. Ex. E; Simmons Dep. 57:16-57:22. Additionally, according to the NYPD's job description, CMN-IIs can "dispense[] and make[] adjustments on medication prescribed for members." Dandrige Decl. Ex. E at CMN000512; *see also* Defs.' 56.1 Stmt. ¶ 98, Pl.'s 56.1 Resp. ¶¶ 10, 15, 98.

Medical Division Nurses are supervised by both doctors and uniformed officers. Defs.' 56.1 Stmt. ¶ 20; Pl.'s 56.1 Resp. ¶ 20. The doctors oversee the Nurses in a "medical capacity," supervising their patient care and case management decisions. Pl.'s 56.1 Resp. ¶ 20; McGinn Dep. 15:23-16:11. The uniformed officers, who do not have medical training, supervise the Nurses only in an "administrative capacity." Defs.' 56.1 Stmt. ¶ 20; Pl.'s 56.1 Resp. ¶ 20. They oversee the Nurses' work hours, payroll, and compliance with NYPD regulations. Defs.' 56.1

Stmt. ¶ 20; Pl.'s 56.1 Resp. ¶ 20; Corey Dep. 18:23-19:24; Donnelly Dep. 9:25-10:22, 14:10-16:9; McGinn Dep. 14:25-16:11. Interestingly, the officers are also responsible for Nurses' performance evaluations and for making promotion recommendations. Defs.' 56.1 Stmt. ¶ 20; Pl.'s 56.1 Resp. ¶ 20; Dandrige Decl. Exs. I, O, R, V.

The promotion process for Nurses has several steps. The Medical Division's Commanding Officer—one of the uniformed officers who supervise the CMNs in an administrative capacity—recommends the promotion in a memorandum to the Personnel Bureau. Defs.' 56.1 Stmt. ¶¶ 34, 53, 88; Pl.'s 56.1 Resp. ¶¶ 34, 53, 88. The Personnel Bureau then double-checks the candidate's credentials and endorses the recommendation. Defs.' 56.1 Stmt. ¶¶ 35, 54, 89; Pl.'s 56.1 Resp. ¶¶ 35, 54, 89. The Personnel Bureau forwards the recommendation through the chain of command to the Police Commissioner, who, at least nominally, has final say over the promotion. Defs.' 56.1 Stmt. ¶¶ 36-37, 55-56, 89; Pl.'s 56.1 Resp. ¶¶ 36-37, 55-56, 89.[2]

## II.     Plaintiff Evette Simmons

Plaintiff began work in the Medical Division as a Nurse in 1988. Defs.' 56.1 Stmt. ¶ 95; Pl.'s 56.1 Resp. ¶ 95. She is a Registered Nurse ("RN") and a licensed Nurse Practitioner ("NP"). Defs.' 56.1 Stmt. ¶¶ 96-97; Pl.'s 56.1 Resp. ¶¶ 96-97. She has both a bachelor's and a master's degree. Defs.' 56.1 Stmt. ¶¶ 96-97; Pl.'s 56.1 Resp. ¶¶ 96-97. Plaintiff has been assigned to at least six of the Medical Division's locations. Defs.' 56.1 Stmt. ¶ 103; Pl.'s 56.1 Resp. ¶ 103; Simmons Dep. 47:18-53:16.

---

[2]     There does not appear to be any formalized process for officers to solicit the input of the Nurses' medical supervisors, whether for purposes of performance evaluations or for promotions. While there is no legal requirement for such a process, having one might better insure consistency in terms of the information supplied to the uniformed personnel from the medical supervisors.

## III.    The 2013 Promotions

### A.    Nilsa McNamara

Until 2007, the Medical Division did not employ any CMN-IIs.  Dandrige Decl. Ex. N at

CMN001146.  That year, the Division promoted Mary Gallo to CMN-II.  Dandrige Decl. Ex. N

at CMN001146.  Gallo remained the Division's only CMN-II until early 2013, when she

announced her intention to retire.  Defs.' 56.1 Stmt. ¶¶ 17-19; Pl.'s 56.1 Resp. ¶¶ 17-19.

In March 2013, Defendant Kenneth Corey, then the Medical Division's Commanding

Officer, began looking for Gallo's replacement.  Defs.' 56.1 Stmt. ¶ 19; Pl.'s 56.1 Resp. ¶ 19.

The soon-to-be vacant position was not, however, formally posted, and no applications were

solicited or interviews conducted.  Pl.'s 56.1 Resp. ¶ 19; Corey Dep. 14:14-17, 21:7-9; Donnelly

Dep. 51:11-25; Simmons Dep. 86:1-25; Sanderson Decl. ¶ 6.  Instead, Corey met with two other

Medical Division supervisors, Defendants Jeffrey Mishula and James Donnelly, to discuss which

Nurse the Division should recommend for promotion.  Defs.' 56.1 Stmt. ¶ 23; Pl.'s 56.1 Resp.

¶ 23; Pl.'s Mem. of Law at 14-15.

Corey, Donnelly, and Mishula unanimously agreed that Nilsa McNamara should be

recommended for promotion.  Defs.' 56.1 Stmt. ¶ 25; Pl.'s 56.1 Resp. ¶ 25.  McNamara had been

a Nurse with the Department for 29 years.[3]  Defs.' 56.1 Stmt. ¶ 26; Pl.'s 56.1 Resp. ¶ 26.  She

worked in a Medical Division subunit that monitors terminally ill and severely disabled officers,

an assignment that Donnelly characterized as "a very hard job."  Donnelly Dep. 76:7-11; *see also*

Defs.' 56.1 Stmt. ¶ 28.  Despite the difficult assignment, McNamara consistently received the

highest possible ratings on her performance evaluations.  Defs.' 56.1 Stmt. ¶ 32; Dandrige Decl.

Ex. I.  She also helped start a support group for the injured officers in her unit.  Defs.' 56.1 Stmt.

---

[3]        There is a dispute between the parties as to whether McNamara is white, Hispanic, or both.  The Court
finds the dispute immaterial to Plaintiff's claims.  *See* discussion at n.8, *infra*.

¶ 30; Pl.'s 56.1 Resp. ¶ 30.  Additionally, according to Donnelly, McNamara's medical supervisors "rave[d]" about her.  Donnelly Dep. 76:23-77:4; *see also* Defs.' 56.1 Stmt. ¶ 31.

On March 22, 2013, Corey recommended McNamara for promotion.  Defs.' 56.1 Stmt. ¶ 34; Pl.'s 56.1 Resp. ¶ 34; Dandrige Decl. Ex. M.  The recommendation noted that McNamara went "above and beyond all expectations" of her position, despite having an assignment "much more challenging and demanding" than others.  Dandrige Decl. Ex. M at CMN000947-CMN000948.  McNamara was officially promoted to CMN-II on April 26, 2013.  Defs.' 56.1 Stmt. ¶ 38; Pl.'s 56.1 Resp. ¶ 38.

## B.    Marilyn Almas

Shortly after recommending McNamara for promotion, Corey wrote to the Personnel Bureau asking for permission to promote more Nurses, arguing that the Medical Division was "having a difficult time attracting highly qualified and highly motivated Case Management Nurses" due in part to "the lack of promotional and salary increase opportunities."  Dandrige Decl. Ex. N at CMN001146.  That request led to the Personnel Bureau authorizing a new CMN-II position in mid-2013.  Defs.' 56.1 Stmt. ¶ 39; Pl.'s 56.1 Resp. ¶ 39.  The newly created CMN-II vacancy was not posted, and Defendants again did not solicit applications or conduct interviews.  Simmons Dep. 86:1-25; Donnelly Dep. 48:9-18, 51:11-25; Sanderson Decl. ¶ 6.

In late 2013, Corey met with Mishula and Donnelly to discuss which Nurse to recommend for promotion.  Defs.' 56.1 Stmt. ¶ 41; Pl.'s 56.1 Resp. ¶ 41.  The group agreed unanimously on Marilyn Almas, a white female.  Defs.' 56.1 Stmt. ¶¶ 18, 43; Pl.'s 56.1 Resp. ¶¶ 18, 43.  Almas had worked as a Medical Division Nurse for 33 years and was the most senior Nurse in the Medical Division.  Defs.' 56.1 Stmt. ¶ 45; Pl.'s 56.1 Resp. ¶ 45.  She worked in the Division's Staten Island location, a clinic that she had been "instrumental" in opening.  Defs.'

56.1 Stmt. ¶¶ 46-47.  Like McNamara, Almas consistently received the highest possible rating on

her performance evaluations.  Defs.' 56.1 Stmt. ¶ 50; Pl.'s 56.1 Stmt. ¶ 50; Dandrige Decl. Ex.

O.  Also like McNamara, Almas' medical supervisors made unsolicited calls to Donnelly

praising her.  Donnelly Dep. 74:14-24; *see also* Defs.' 56.1 Stmt. ¶ 50.

On September 30, 2013, Corey recommended Almas for promotion.  Defs.' 56.1 Stmt.

¶ 53; Pl.'s 56.1 Stmt. ¶ 53; Dandrige Ex. Q.  In his recommendation, Corey stated that Almas'

"professionalism, drive and compassion day in and day out truly know no bounds."  Dandrige

Ex. Q at CMN000951.  Almas was officially promoted on December 23, 2013.  Dandrige Decl.

Ex. H at CMN001016.

IV.    **Plaintiff's January and April 2014 Complaints**

Following Almas' promotion, the New York State Nurses Association ("NYSNA"), a

labor organization that represents Nurses employed by the Department, held two meetings to

discuss the promotion process, one in January 2014 and one in April 2014.  Defs.' 56.1 Stmt.

¶¶ 58, 65; Pl.'s 56.1 Resp. ¶¶ 58, 65.  Plaintiff and Defendant Brian McGinn—who in October

2013 had replaced Corey as Commanding Officer of the Medical Division—attended these

meetings, along with other Nurses and officers.  Defs.' 56.1 Stmt. ¶¶ 58, 66; Pl.'s 56.1 Resp.

¶¶ 58, 66; McGinn Dep. 34:23-36:6; Simmons Dep. 28:8-29:8.  Among other grievances, the

Nurses complained about "[t]he use of solely 'subjective data' (as per Captain Donnelly) for

evaluation and 'promotion' of civilian nursing staff" and "'promotion' of some civilian nursing

staff . . . while others with 20-25 years of experience and who are also more qualified

academically are overlooked."  Dandrige Decl. Ex. T at CMN000613; *see also* Defs.' 56.1 Stmt.

¶ 63; Pl.'s 56.1 Resp. ¶ 63.

The parties dispute whether complaints about racial discrimination were raised at these

meetings.  *Compare* Simmons Dep. 21:8-22:5 (at the January 2014 meeting, "I verbalized that

other black nurses were not offered equitable opportunity for promotion to level two.") *and*

Simmons Dep. 30:12-23 (at the April 2014 meeting, "We discussed the pattern of overlooking,

passing over black nurses for level two position[s] . . . .") *with* McGinn Dep. 30:12-31:20

(complaints about racial discrimination "absolutely didn't occur" and "[n]othing had to do with

race" at the January and April 2014 meetings) *and* Donnelly Dep. 71:7-12 (a complaint about

racial discrimination "was not said at the meeting" in April 2014).  *See also* Defs.' 56.1 Stmt.

¶¶ 61-62, 67; Pl.'s 56.1 Resp. ¶¶ 61-62, 67.

## V.      The 2014 CMN Promotion

### A.      Eileen Fitzsimmons

In the summer of 2014, the Medical Division created another CMN-II position.  Defs.'

56.1 Stmt. ¶¶ 74-75; Pl.'s 56.1 Resp. ¶¶ 74-75.  Once again, the position was not posted, and the

Division did not solicit applications or conduct interviews.  *See* McGinn Dep. 25:3-8; Simmons

Dep. 86:1-22.  McGinn, as the new Commanding Officer, made the promotion recommendation,

this time without meeting with Donnelly and Mishula.  Defs.' 56.1 Stmt. ¶ 75; Pl.'s 56.1 Resp.

¶ 75.

McGinn recommended Eileen Fitzsimmons, a white female.  Defs.' 56.1 Stmt. ¶¶ 18, 75,

79; Pl.'s 56.1 Resp. ¶¶ 18, 75, 79.  Fitzsimmons had worked as a Nurse in the Department for 22

years.  Defs.' 56.1 Stmt. ¶ 79; Pl.'s 56.1 Resp. ¶ 79.  She consistently received the highest or

second-highest possible ratings on her performance evaluations.  Defs.' 56.1 Stmt. ¶¶ 82-83;

Pl.'s 56.1 Resp. ¶¶ 82-83; Dandrige Decl. Ex. V.    On July 11, 2014, McGinn recommended

Fitzsimmons for promotion.  Defs.' 56.1 Stmt. ¶ 88; Pl.'s 56.1 Stmt. ¶ 88; Dandrige Ex. X at

CMN000954-CMN000956. Fitzsimmons was officially promoted on November 25, 2014. Dandrige Decl. Ex. H at CMN001016.

## VI. Plaintiff's August and September 2014 Complaints

In August and September 2014—after McGinn recommended Fitzsimmons but before she was officially promoted—NYSNA held additional meetings concerning Nurse promotions. Defs.' 56.1 Stmt. ¶ 69; Pl.'s 56.1 Resp. ¶ 69; Simmons Dep. 31:6-32:1; Sanderson Decl. ¶ 7. Plaintiff, Donnelly, and McGinn attended these meetings. Simmons Dep. 31:6-11; McGinn Dep. 30:5-11.

As with the earlier meetings, the parties dispute whether Plaintiff raised complaints about racial discrimination at these meetings. *Compare* Simmons Dep. 31:6-33:4, *and* Sanderson Decl. ¶¶ 7-8, *with* McGinn Dep. 30:12-31:20. It is undisputed that later, in November 2014, Plaintiff submitted a written grievance about racial discrimination to NYSNA. *See* Defs.' 56.1 Stmt. ¶ 91; Pl.'s 56.1 Resp. ¶ 91; Simmons Dep. 10:21-24.

## VII. Procedural History

Plaintiff filed a charge of racial discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on April 23, 2015. Dandrige Decl. Ex. Z. She filed her Complaint in the instant action on March 1, 2016, and received a right-to-sue letter from the EEOC on June 14, 2016. *See* Am. Compl. ¶ 3. Plaintiff amended her Complaint on July 28, 2016. Am. Compl. On May 12, 2017, Defendants moved for summary judgment. Defs.' Notice of Mot.

**DISCUSSION**

Plaintiff brings causes of action for race discrimination under 42 U.S.C. § 1981, 42 U.S.C. § 1983, and Title VII. Am. Compl. ¶¶ 28-29, 32-33, 36-37. Plaintiff also alleges retaliation under the same three statutes. *Id.* ¶¶ 30-31, 34-35, 38-39. Defendants move for summary judgment as to all claims. Defs.' Notice of Mot.[4]

## I.     Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris,* 550 U.S. 372, 380 (2007) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). To defeat summary judgment, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Sista v. CDC IXIS N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006). Courts "construe the facts in the light most favorable to the nonmoving party and resolve all ambiguities and draw all reasonable inferences against the movant." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (per curiam).

"At summary judgment in an employment discrimination case, a court should examine

---

[4]      Defendants have not disputed the applicability of these statutes. The Court notes that Title VII claims are not available against individuals, *see Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012) (collecting cases), and § 1983 claims are not available against municipalities absent a showing of an unconstitutional policy or custom, *see Patterson v. Cty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004). For these reasons, the Title VII claims should be dismissed against Defendants Corey, Donnelly, McGinn, and Mishula, and the § 1983 claims should be dismissed against Defendant City of New York. But even with these dismissals, Plaintiff's Title VII claims would remain against the City of New York, and the § 1983 claims would remain against Corey, Donnelly, McGinn, and Mishula. Because a § 1983 claim for employment discrimination "parallels" a Title VII claim in all respects material to this case, *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 88 (2d Cir. 2015), dismissal on these grounds would be academic.

the record as a whole, just as a jury would, to determine whether a jury could reasonably find an invidious discriminatory purpose on the part of an employer." *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 102 (2d Cir. 2001). "A motion for summary judgment may be defeated where 'a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.'" *Id.* (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)).

The Second Circuit "has repeatedly emphasized 'the need for caution about granting summary judgment to an employer in a discrimination case where . . . the merits turn on a dispute as to the employer's intent.'" *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010) (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008)). "Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *LeBlanc v. United Parcel Serv.*, No. 11-CV-6983, 2014 WL 1407706, at *10 (S.D.N.Y. Apr. 11, 2014) (quoting *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997)). But "[e]ven in the discrimination context . . . a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment and show more than some metaphysical doubt as to the material facts." *Gorzynski*, 596 F.3d at 101 (internal quotation marks and citations omitted).

## II.     Defendants Are Entitled to Summary Judgment on Plaintiff's Employment Discrimination Claims

### A.     Applicable Law

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law." *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). "The Fourteenth Amendment provides public employees with the right to be free from discrimination. . . . Consequently, public employees aggrieved by discrimination in the terms of their employment may bring suit under 42 U.S.C. § 1983 against any responsible persons acting under color of state law." *Vega*, 801 F.3d at 88 (citing *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006), and *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122-23 (2d Cir. 2004)). "A state employee acting in his official capacity is acting under color of state law. . . . Once the color of law requirement is met, a plaintiff's 'equal protection claim parallels his Title VII claim,' except that a § 1983 claim, unlike a Title VII claim, can be brought against an individual." *Id.* (quoting *Feingold*, 366 F.3d at 159).[5]

Courts analyze employment discrimination claims under Title VII, § 1981, and § 1983 using "the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973)." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012); *see also Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). "Under *McDonnell Douglas*, a plaintiff bears the initial burden of proving by a preponderance of the evidence a *prima facie* case of discrimination; it is then the defendant's burden to proffer a legitimate non-

---

[5]     The Court notes that "[a]n individual may be held liable under §§ 1981 and 1983 only if that individual is personally involved in the alleged deprivation." *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015) (internal quotation marks omitted) (collecting cases). The record shows that McGinn played no role in the promotions of McNamara or Almas in 2013, as he was not employed by the Medical Division at that time. *See* Defs.' 56.1 Stmt. ¶ 74; Pl.'s 56.1 Resp. ¶ 74. Likewise, Corey was not involved in the promotion of Fitzsimmons in 2014, which took place after Corey had left the Medical Division. *See* Defs.' 56.1 Stmt. ¶¶ 74-75; Pl.'s 56.1 Resp. ¶¶ 74-75; Corey Dep. 9:12-25. Because Defendants have not disputed their individual liability under § 1983, and because Plaintiff's claims fail as a matter of law against all Defendants, the Court will not consider the intricacies of individual liability at this time.

        Additionally, the Court notes that there was significant sloppiness in the parties' filings. Plaintiff named Corey as a Defendant in her original Complaint, Dkt. 1, but omitted Corey entirely from her Amended Complaint, Dkt. 15. Nevertheless, Defendants answered for Corey, Dkt. 17, and, throughout their briefing, the parties have continued to treat Corey as a defendant in this case.

discriminatory reason for its actions; the final and ultimate burden is on the plaintiff to establish that the defendant's reason is in fact pretext for unlawful discrimination." *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014); *see also Littlejohn*, 795 F.3d at 307-08.

### B.     Plaintiff Has Not Established a Prima Facie Case of Discrimination

A plaintiff establishes a prima facie case "if he or she introduces evidence that raises a reasonable inference that the action taken by the employer was based on an impermissible factor. [The plaintiff] must show: (1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008) (internal quotation marks and citations omitted) (citing *Feingold*, 366 F.3d at 152). "The plaintiff's burden of proof as to this first step has been characterized as 'minimal' and '*de minimis.*'" *Zann Kwan v. Adalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir. 2013); *see also Littlejohn*, 795 F.3d at 311.

The first three prongs of Plaintiff's prima facie case are undisputed. Plaintiff is African American and was qualified for a CMN-II promotion. *See* Defs.' 56.1 Stmt. ¶¶ 18(e), 96-97; Pl.'s 56.1 Resp. ¶¶ 18, 96-97. Defendants' failure to promote Plaintiff constitutes an adverse employment action.[6] *See* Defs.' Mem. of Law at 4-10, 14; Defs.' Reply Mem. of Law at 5-8; *Terry v. Ashcroft*, 336 F.3d 128, 139 (2d Cir. 2003). The Court turns now to the fourth prong, a point that the parties dispute.

---

[6]      The parties dispute whether, under the relevant collective bargaining agreement, becoming a CMN-II is a "promotion" or an "upgrade." *See* Defs.' 56.1 Stmt. ¶ 14; Pl.'s 56.1 Resp. ¶ 14. This dispute is not material to Plaintiff's claims. Regardless of the label applied, Defendants do not dispute that a failure to advance a CMN-I employee to a CMN-II position is an "adverse employment action" for purposes of evaluating an employment discrimination claim. Defs.' Mem. of Law at 4-10, 14; Defs.' Reply Mem. of Law at 5-8. For this reason, the Court takes no position on the legal significance, if any, of the distinction. *See, e.g., Martinez v. Davis Polk & Wardwell LLP*, 208 F. Supp. 3d 480, 487-88 (E.D.N.Y. 2016) (distinguishing between "failure-to-promote" and "failure-to-upgrade" claims), *aff'd*, No. 16-3476-CV, 2017 WL 5592281 (2d Cir. Nov. 21, 2017). For the sake of convenience, the Court refers to the change as a promotion.

**1.**     **The Circumstances of the Promotions Do Not Give Rise to an Inference of Discrimination**

"An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)). Plaintiff has not alleged that Defendants made any explicitly or implicitly invidious comments regarding her race. *See* Pl.'s Mem. of Law at 24-27. She relies solely on circumstantial evidence to raise an inference of discrimination. *See id.*

**i.**     **Plaintiff's Qualifications in Comparison to Other Nurses**

"A showing of disparate treatment—that is, a showing that the employer treated plaintiff 'less favorably than a similarly situated employee outside his protected group'—is a recognized method of raising an inference of discrimination for purposes of making out a prima facie case." *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)). "A plaintiff relying on disparate treatment evidence 'must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.'" *Id.* Summary judgment is appropriate if no reasonable jury could find that the employee who suffered an adverse employment action was, in fact, similarly situated to those who did not. *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499-500 n.2 (2d Cir. 2001).

Plaintiff does not argue that she was similarly situated to McNamara, Almas, and Fitzsimmons. *See* Pl.'s Mem. of Law at 24-27. Nor could she, as those Nurses reported to different supervisors and received consistently stronger performance evaluations than Plaintiff. *See* Defs.' Mem. of Law at 5, 8 (citing Dandrige Decl. Exs. I, O, R, V); *Baity v. Kralik*, 51 F.

Supp. 3d 414, 447 (S.D.N.Y. 2014) (collecting cases); *Potash v. Florida Union Free Sch. Dist.*, 972 F. Supp. 2d 557, 580-81 (S.D.N.Y. 2013).

Instead, Plaintiff argues that she was *more* qualified for the promotion than McNamara, Almas, and Fitzsimmons. *See* Pl.'s Mem. of Law at 28-29. She points to her master's degree and NP license, along with her commendations and frequent rotations, to establish her superior qualifications. *See id.* But Plaintiff presents no evidence that these factors make her objectively more qualified than McNamara, Almas, and Fitzsimmons. Without more, Plaintiff's qualifications do not establish a prima facie case.

### ii. The "Pattern" of Failing to Promote African American Nurses

"Statistical information . . . may be considered as circumstantial evidence supporting the necessary inference of discrimination." *Miller v. Nat'l Ass'n of Sec. Dealers, Inc.*, 703 F. Supp. 2d 230, 245 (E.D.N.Y. 2010) (citing *Stratton v. Dep't for the Aging*, 132 F.3d 869, 879-80 (2d Cir. 1997), and *Pleau v. Centrix, Inc.*, 343 F. App'x 685, 688 (2d Cir. 2009)). In order to raise an inference of discrimination, however, a plaintiff must offer statistical evidence with a sample size sufficiently large from which the Court can draw reasonable conclusions. *See Pollis v. New Sch. for Soc. Research*, 132 F.3d 115, 121 (2d Cir. 1997) ("The smaller the sample, the greater the likelihood that an observed pattern is attributable to other factors and accordingly the less persuasive the inference of discrimination to be drawn from it."); *Sattar v. Johnson*, 129 F. Supp. 3d 123, 140 (S.D.N.Y. 2015) (collecting cases), *aff'd sub nom. Sattar v. U.S. Dep't of Homeland Sec.*, 669 F. App'x 1 (2d Cir. 2016).

Plaintiff argues that the "pattern" of promoting white and Hispanic Nurses evidences an intent not to promote qualified black Nurses. Pl.'s Mem. of Law at 25. Indeed, it is undisputed that the Medical Division has never promoted an African American Nurse to the CMN-II

position.  *See* Defs.' 56.1 Stmt. ¶¶ 18, 72; Pl.'s 56.1 Resp. ¶¶ 18, 72; Donnelly Dep. 53:14-20.

The four CMN-IIs in the Division's history (Gallo, McNamara, Almas, and Fitzsimmons) are all

either white or Hispanic.  *See* Defs.' 56.1 Stmt. ¶¶ 18, 72; Pl.'s 56.1 Resp. ¶¶ 18, 72; Donnelly

Dep. 53:14-20.

A "pattern" of failing to promote black CMNs could well be probative of discriminatory

intent, regardless of whether the CMNs who succeeded in obtaining promotions were white,

Hispanic, or both.[7]  The problem for Plaintiff is that four promotions is not a sufficiently large

sample from which a reasonable jury could draw an inference of discrimination.  *See Sattar*, 129

F. Supp. 3d at 140 (rejecting an inference of discrimination based on a sample size of six

employees and collecting similar cases).  The racial composition of the very small cadre of

Nurses that have been promoted to CMN-IIs does not, therefore, raise an inference of

discrimination.

### iii.    Defendants' Failure to Post Notice of CMN-II Vacancies

An employer's "departures from procedural regularity" in the course of an employment

decision can "raise a question as to the good faith of the process" and, ultimately, serve as

circumstantial evidence of discrimination.  *Weinstock v. Columbia Univ.*, 224 F.3d 33, 45

(2d Cir. 2000) (quoting *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 313 (2d Cir. 1997));

*see also Hiramoto v. Goddard Coll. Corp.*, 684 F. App'x 48, 50 (2d Cir. 2017).  Summary

judgment is appropriate, however "where 'whatever irregularities existed' were either unrelated

to discrimination or 'did not affect the final [adverse] decision.'"  *Hiramoto*, 684 F. App'x at 50

---

[7]    The parties dispute whether McNamara, who identifies as "Hispanic," is "white" for purposes of
establishing a "pattern" of discrimination.  *See* Defs.' Reply Mem. of Law at 6; Defs.' 56.1 Stmt. ¶ 18(c); Pl.'s 56.1
Resp. ¶ 18.  This dispute is not material to Plaintiff's prima facie case.  Regardless of whether McNamara is white—
and thus whether Plaintiff can show that only white Nurses have been promoted—it is undisputed that no black
CMN has ever been promoted.  *See* Defs.' 56.1 Stmt. ¶¶ 18, 72; Pl.'s 56.1 Resp. ¶¶ 18, 72; Donnelly Dep. 53:14-20.

(alteration in original) (quoting *Weinstock*, 224 F.3d at 41, 45).

Here, a reasonable jury could find that Defendants departed from their regular procedures by failing to post notices of the vacant CMN-II positions. The parties do not dispute that these positions were not posted. *See* Corey Dep. 14:14-17, 21:7-9; Donnelly Dep. 38:9-18, 51:11-25; McGinn Dep. 25:3-8; Simmons Dep. 86:1-25; Sanderson Decl. ¶ 6. Nor do they dispute that the collective bargaining agreement between NYPD and NYSNA required the Medical Division to post notices of "vacancies in promotional titles."[8] Simmons Decl. Ex. 16 at 2; *see also* Defs.' Reply Mem. of Law at 3-4. A November 2016 arbitration decision held that this provision applied to CMN-II vacancies. *See* Simmons Decl. Ex. 16 at 10-12; Defs.' Reply Mem. of Law at 5. A reasonable jury could also find that this procedural irregularity affected Defendants' employment decisions, as it limited the individuals whom Defendants considered promoting. Plaintiff testified that she would have applied had she been given "notice that there was an opportunity" to do so. Simmons Dep. 97:18-21; *see also id.* 86:3-22.

Plaintiff cannot show, however, that Defendants' failure to follow their procedures had anything to do with race. While Defendants' failure to follow established procedures may raise an inference of impropriety, a reasonable jury could not rely on it, without more, to find an inference of discrimination.[9] *See Thelwell v. City of New York*, No. 13-CV-1260, 2015 WL

---

[8] In light of the arbitration decision, this is perhaps a moot point, but it is inexplicable why, in this day and time, an employer as large and sophisticated as the New York City Police Department would not know and follow best practices relative to promotions and human capital. It is possible that the Department promoted the best qualified Nurses. But it is also possible that the promotion process rewarded characteristics other than quality (*e.g.*, having a high-ranking mentor). Regardless, a process that is not transparent and open to all fuels distrust. For all of the reasons discussed, Defendants are entitled to summary judgment, but they should not read this decision as expressing approval for the processes that they followed.

[9] Invoking issue preclusion, Plaintiff asks this Court to preclude Defendants from (a) claiming that they were not obligated to post CMN-II vacancy notices; (b) claiming that a change from CMN-I to CMN-II is an "upgrade," rather than a "promotion"; and (c) calling the promotions "discretionary." *See* Pl.'s Mem. of Law at 20-22; Pl.'s 56.1 Resp. ¶¶ 16, 68. The Court has no need to reach these arguments. As Defendants point out, Defendants do not deny that they were obligated to post CMN-II vacancy notices. Defs.' Reply Mem. of Law at 4. Rather, they argue that the failure to do so does not raise an inference of discrimination. *See id.* at 7. Next, as the Court has explained,

4545881, at *15 (S.D.N.Y. July 28, 2015) ("[A]s a general matter, the mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent." (quoting *Harris v. Niagara Mohawk Power Corp.*, 252 F.3d 592, 599 (2d Cir. 2001)).

In sum, the circumstances do not raise an inference of discrimination. Taken separately or together, the Plaintiff's circumstances to which Plaintiff points carry so little probative value that they do not raise an inference of discrimination.

### C. Defendants Have Offered Legitimate, Nondiscriminatory Reasons for the CMN-II Promotions, and Plaintiff Cannot Show that the Reasons Are Pretextual

Assuming *arguendo* that Plaintiff could establish a prima facie case of discrimination, the Court turns to the second step in the *McDonnell Douglas* framework. At this point, the burden shifts to the defendant to "come forward with its justification for the adverse employment action against the plaintiff." *Littlejohn*, 795 F.3d at 307 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993), and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981)). "If the employer articulates such a reason for its actions, the burden shifts back to the plaintiff to prove that the employer's reason was in fact pretext for discrimination. At this point, the plaintiff must produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not discrimination was the real reason for the discharge." *Martinez v. Davis Polk & Wardwell LLP*, No. 16-3476-CV, 2017 WL 5592281, at *1 (2d Cir. Nov. 21, 2017) (internal quotation marks and citations omitted) (quoting *Van Zant v. KLM Royal Dutch*

---

labeling the CMN-II position as an "upgrade" or as a "promotion" has no significance for Plaintiff's claims. *See supra* n.6. Finally, even if Plaintiff's preclusion arguments had merit, Plaintiff would be incorrect that the arbitration decision precludes Defendants from calling the promotions "discretionary." The decision made no such finding. *See* Decl. Ex. 16 at 11. In short, Plaintiff's preclusion arguments have no bearing on this case.

*Airlines*, 80 F.3d 708, 714 (2d Cir. 1996)); *see also Littlejohn*, 795 F.3d at 307-08 ("[T]he plaintiff must demonstrate that the proffered reason was not the true reason (or in any event not the sole reason) for the employment decision . . . .").

### 1. Performance Evaluations

### i. Nondiscriminatory Explanation

Defendants base their promotion decisions in large part on the Nurses' annual performance evaluations. *See* Defs.' Mem. of Law at 5, 8. McNamara, Almas, and Fitzsimmons each consistently scored "Above Standards" and "Well-Above Standards," the two highest ratings, on their evaluations during the ten years prior to their promotions. *See* Defs.' 56.1 Stmt. ¶¶ 32, 50, 82-83; Pl.'s 56.1 Stmt. ¶¶ 32, 50, 82-83; Dandrige Decl. Exs. I, O, V. Their evaluations also contained substantive comments commending their job performance and potential for advancement. *See, e.g.*, Dandrige Decl. Ex. I at CMN000908 (McNamara "is an excellent worker and can always be counted on to get the job done"), Ex. O at CMN000816 (Almas "is always available to take on new tasks and willing to help others"), Ex. V at CMN000718 (Fitzsimmons "continually utilizes her skills for the best patient care possible" and "has excellent career potential").

In contrast, Plaintiff consistently received an average rating, "Meets Standards," on her evaluations. *See* Defs.' 56.1 Stmt. ¶ 101; Dandrige Decl. Ex. R. She scored "Above Standards" on only three occasions, and she never received a "Well-Above Standards" rating in the ten years prior to the CMN-II promotions. Defs.' 56.1 Stmt. ¶ 101; Dandrige Decl Ex. R at CMN000127, CMN000131, CMN000137. The comments in her evaluations were, at best, tepid and boilerplate. *See, e.g.*, Dandrige Decl. Ex. R at CMN000205 (Plaintiff "handles her assignments

in a professional manner"), CMN000123 (Plaintiff "is competent with the [officers] assigned to her care").

## ii. Pretext

Plaintiff attacks the performance evaluations as pretextual, arguing that they were completed by uniformed officers who supervised the Nurses only in an administrative capacity. *See* Pl.'s Mem. of Law at 11; Pl.'s 56.1 Resp. ¶ 101. According to Plaintiff, these officers have no medical training and, therefore, the evaluations do not reflect the Nurses' medical performance. *See* Pl.'s 56.1 Resp. ¶ 101. This argument fails to establish pretext. As an initial matter, Defendants testified that officers sought input from the Nurses' medical supervisors before conducting evaluations. Donnelly Dep. 21:18-22:25, 24:21-24, 29:7-14, 41:8-43:4.[10] Even without this testimony, the fact that the evaluations may have reflected only non-medical performance does not strip them of probative value as to the Nurses' suitability for promotion. Defendants state that they were looking to promote Nurses who showed a "desire to perform beyond [their] assigned tasks and duties," Defs.' Mem. of Law at 6, who "were capable of assuming supervisory responsibilities," *id.* at 9, and who demonstrated "compassion, independence, and innovation," *id.*—all non-medical aspects of the Nurses' job performance. The evaluations spoke precisely to those qualities. *See, e.g.*, Dandrige Decl. Ex. I at CMN000908 (McNamara "is able to work independently and with minimal supervision"), Ex. O at CMN000829 (Almas' work "always exceeds basic requirements"), Ex. V at CMN000718 (Fitzsimmons "maintains a [c]ompassionate and understanding relationship" with patients).

---

[10] Plaintiff cannot raise a genuine dispute over this testimony. Plaintiff's only argument is that the officers' conversations with medical supervisors "were not documented" and "are not independently verifiable." Pl.'s Mem. of Law at 30; *see also id.* at 11; Pl's 56.1 Resp. ¶ 101. A lack of documentary evidence bears only on the weight of Defendants' testimony. It does not create a genuine dispute of fact. Because Plaintiff has failed to come forward with any evidence affirmatively contradicting this testimony, the Court considers it undisputed. For the same reasons, the lack of documentary evidence does not, standing alone, establish pretext.

Plaintiff therefore fails to show that Defendants' reliance on evaluations was "not the true reason" for their promotional decisions.  *Littlejohn*, 795 F.3d at 307-08; *see also Fontecchio v. ABC Corp.*, No. 12-CV-6998, 2015 WL 327838, at *9 (S.D.N.Y. Jan. 23, 2015) (finding no pretext based on Plaintiff's superior sales performance because "Defendant's [nondiscriminatory] explanation does not concern her sales acumen").

Plaintiff focuses her next attack specifically on McNamara's and Almas' evaluations. Plaintiff argues that copies of the evaluations were not physically present when Corey met with Donnelly and Mishula to discuss promotions.  *See* Pl.'s Mem. of Law at 16, 30; Pl.'s 56.1 Resp. ¶¶ 32, 50, 101.  From this fact, Plaintiff argues that the evaluations must not have been considered in making these promotion decisions and, thus, that they are a pretext for discrimination.[11]  *See* Pl.'s Mem. of Law at 16, 30.  This argument lacks merit—and, in fact, is frivolous.  The undisputed evidence shows that Donnelly and Corey thoroughly reviewed McNamara's and Almas' evaluations prior to their meeting.  Further, Donnelly testified that his position as a Medical Division supervisor made him generally familiar with all Nurses' evaluations, and he recalled that McNamara's and Almas' evaluations were particularly strong. Donnelly Dep. 60:8-19, 75:13-15, 77:17-19.  In the years prior to the promotion decisions, Donnelly and Corey served as second-line reviewers for some of McNamara's and Almas' evaluations, meaning that they signed statements certifying that they had reviewed and agreed with the evaluations.  *See* Dandrige Decl. Ex. I at CMN000911, CMN000915, CMN000919, CMN000923; Dandrige Decl. Ex. O at CMN000825, CMN000837.  The fact that copies of the evaluations were not physically present during the meetings at which the promotions were

---

[11]  Plaintiff does not raise this argument with regard to Fitzsimmons' promotion, as McGinn testified that he had a copy of Fitzsimmons' evaluations at his desk when he decided to recommend her for promotion.  McGinn Dep. 17:19-20:8.

discussed does not create a factual dispute as to whether the evaluations were considered as part of Defendants' employment decisions.

Turning to Fitzsimmons' promotion, Plaintiff argues that McGinn did not review the evaluations of any Nurse other than Fitzsimmons. *See* Pl.'s Mem. of Law at 19, 31; Pl.'s 56.1 Stmt. ¶¶ 82-83, 101. Thus, Plaintiff argues, McGinn did not compare Fitzsimmons' evaluations with Plaintiff's evaluations, and the discrepancy in ratings between them must be a pretextual reason for the promotion.[12] *See* Pl.'s Mem. of Law at 19, 31. Plaintiff takes McGinn's testimony out of context. McGinn testified that he reviewed the evaluations only of those Nurses whose supervisors had made strong recommendations about them. McGinn Dep. 22:13-23:3. If supervisors provided "nothing but negative comments" about a Nurse, McGinn did not look at the Nurse's evaluations. *Id.* In other words, in deciding who to promote, McGinn weighed supervisors' recommendations heavily and reviewed evaluations only as a secondary, backup factor. Because Fitzsimmons received strong recommendations, McGinn was "leaning heavily" toward promoting her when he turned to her evaluations—but he did not make a final decision until after he reviewed her evaluations. *Id.* at 19:21-20:8.

That McGinn weighed evaluations less heavily than recommendations does not make reliance on evaluations pretextual. Courts "afford employers a great deal of discretion in assessing the credentials and qualifications of applicants." *Milano v. Astrue*, No. 05-CV-6527, 2008 WL 4410131, at *32 (S.D.N.Y. Sept. 26, 2008) (citing *Byrnie*, 243 F.3d at 103), *aff'd*, 382 F. App'x 4 (2d Cir. 2010); *see also Oluyomi v. Napolitano*, 811 F. Supp. 2d 926, 943 (S.D.N.Y. 2011) ("An employer has the right to decide how it will value the qualifications of different candidates." (citing *Scaria v. Rubin*, 117 F.3d 652, 654-55 (2d Cir. 1997))), *aff'd*, 481 F. App'x

---

[12] Plaintiff does not raise this argument in the context of McNamara's and Almas' promotions, as Corey testified that he considered all of the Nurses for promotion. Corey Dep. 21:13-17.

693 (2d Cir. 2012). The Court acknowledges that the evidence on this point rests on McGinn's testimony. Nevertheless, Plaintiff has not come forward with any evidence that the strong evaluations of Fitzsimmons were not part of an "honest even though partially subjective evaluation" of her qualifications. *Digilov v. JPMorgan Chase Bank, N.A.*, No. 13-CV-975, 2015 WL 685178, at *13 (S.D.N.Y. Feb. 18, 2015).

In sum, Plaintiff has failed to show that Defendants' reliance on performance evaluations was anything short of an honest, nondiscriminatory explanation for whom was promoted.

### 2. Feedback from Supervisors

#### i. Nondiscriminatory Explanation

As the Court has noted, Defendants explain the promotions in part based on feedback that they received from the Nurses' supervisors. *See* Defs.' Mem. of Law at 8-9; Defs.' 56.1 Stmt. ¶¶ 31, 50, 77, 81, 105. Donnelly and McGinn testified that they received unsolicited phone calls from McNamara's, Almas', and Fitzsimmons' supervisors commending their performance. *See* Donnelly Dep. 74:11-24 (Donnelly "would get random calls" from Almas' supervisors about "how wonderful of a nurse she is"), 76:23-77:7 (McNamara's medical supervisors "rave[d]" about her); McGinn Dep. 25:9-24. In contrast, Plaintiff's supervisors complained to Donnelly that Plaintiff was unable to perform routine medical procedures. Donnelly Dep. 30:14-37:19. Plaintiff required retraining on these procedures, and she was the only Nurse to need retraining. *Id.* 34:7-17, 39:19-41:7.[13]

---

[13] Defendants also claim that they received reports that Plaintiff had "poor interpersonal skills." Defs.' 56.1 Stmt. ¶ 105. Nothing in the record supports this assertion, other than affidavits of McGinn and Corey, submitted as part of Defendants' summary judgment briefing. *See* Decl. of Brian McGinn, Dkt. 34, ¶ 18; Decl. of Kenneth Corey, Dkt. 33, ¶ 20. Affidavits of witnesses who were deposed are disfavored on summary judgment. *See Bright v. Coca-Cola Refreshments USA, Inc.*, 639 F. App'x 6, 8 (2d Cir. 2015) (citing *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)). The Court has not considered Corey's or McGinn's affidavits in deciding this motion.

###### ii. Pretext

To show pretext, Plaintiff argues that she received commendations for her job performance equal in strength to those of McNamara, Almas, and Fitzsimmons. *See* Pl.'s Mem. of Law at 3-4, 9-10. This argument mischaracterizes the record. Plaintiff points to a February 4, 2009 letter from a "Supervising Administrative Aide" stating that Plaintiff "is a conscientious and highly motivated nurse" and recommending Plaintiff for "any advanced career opportunities." Simmons Decl. Ex. 12; *see also* Simmons Decl. ¶ 27. Had Defendants seen this letter—and there is no evidence that they did—they would have been entitled to accord it little weight in their promotion decisions. The letter contains no foundation as to the basis for its author's beliefs or in what capacity the author observed Plaintiff's performance. And the letter fails to speak to Plaintiff's core competencies, thus failing to rebut the reports that Plaintiff required retraining on basic procedures. This letter falls far short of establishing pretext.

Next, Plaintiff points to a July 6, 2016 letter praising Plaintiff's "compassion," "work ethic," and "skills." Simmons Decl. Ex. 13. This letter also does not support a finding of pretext. It was written well after this lawsuit was filed and after the complained-of promotions had occurred.

Plaintiff notes that the NYPD awarded her special citations, Pl's Mem. of Law at 3-4, but she admits that the citations had nothing to do with job performance, Pl's 56.1 Resp. ¶ 100. Rather, the citations were for educational achievement and longevity of service, in addition to a general citation that all Nurses received. Defs.' 56.1 Stmt. ¶ 100; Pl's 56.1 Resp. ¶ 100.

Plaintiff's remaining arguments lack merit. Plaintiff argues pretext on the grounds that the supervisors' feedback was received orally and was not contemporaneously recorded. *See* Pl.'s Mem. of Law at 15, 30. As the Court has discussed, a lack of documentary evidence,

standing alone, neither renders facts genuinely disputed nor establishes pretext. *See supra* n.11.

Plaintiff also attacks the supervisors' commendations as inadmissible hearsay. *See* Pl.'s 56.1

Resp. ¶¶ 31, 82-83. The objection is overruled. The Court has not considered the supervisors'

statements for their truth, but rather for the effect that they had on Defendants' state of mind

when making promotion decisions. *See Hicks v. Richard Low*, 309 F. App'x 472, 474-75 (2d

Cir. 2009) ("Where . . . the statement is offered as circumstantial evidence of [a defendant's]

state of mind, it does not fall within the definition [of hearsay] . . . because it was not offered to

prove the truth of the matter asserted." (alterations in original) (quoting *United States v.*

*Salameh,* 152 F.3d 88, 112 (2d Cir. 1998))).

In short, Plaintiff has failed to show that supervisor feedback was a pretextual reason for

Defendants' promotional decisions.

### 3. Leadership and Initiative

#### i. Nondiscriminatory Explanation

Defendants argue that McNamara and Almas demonstrated a "desire to perform beyond

[their] assigned tasks and duties," an important quality in light of CMN-IIs' supervisory

responsibilities. Defs.' Mem. of Law at 6. McNamara helped start a support group for severely

injured officers, an initiative well beyond her formal duties. *See* Defs.' 56.1 Stmt. ¶ 30; Pl.'s

56.1 Resp. ¶ 30; Donnelly Dep. 76:12-22. Almas was "instrumental" in opening a new

healthcare clinic on Staten Island. *See* Defs' 56.1 Stmt. ¶ 46; Dandrige Decl. Ex. Q. Defendants

were entitled to rely on these candidates' demonstrated leadership skills when making

promotional decisions. *See Fontecchio*, 2015 WL 327838, at *9 ("[L]eadership style is not the

sort of wholly subjective and unarticulated standard that would support a showing of pretext."

(citing *Tucker v. New York City*, 376 F. App'x 100, 102 (2d Cir. 2010))); *see also Byrnie*, 243

F.3d at 106 ("An employer is entitled to arrive at a subjective evaluation of a candidate's suitability for a position.").

### ii.     Pretext

Plaintiff argues that she shared the same leadership qualities as McNamara and Almas, making Defendants' explanation pretextual.  Pl.'s Mem. of Law at 29.  Plaintiff states that she earned her master's degree and NP license while working full-time as a Nurse, showing her "dedication to her nursing craft, and dedication to NYPD."  *Id.*  She also points to her election as Chair of the Council of Nursing Practitioners, and the time that she spent counseling officers on healthy eating.  *See id.*; Simmons Decl. Ex. 1.  While admirable, none of these accomplishments show that Plaintiff made concrete contributions to the Medical Division, above and beyond her duties, to the extent that McNamara and Almas did.  Accordingly, Plaintiff has failed to show that Defendants' explanation is pretextual.

### D.     Plaintiff's Educational Credentials Do Not Establish Pretext

Putting aside her attacks on Defendants' explanations, Plaintiff's case fundamentally rests on the fact that she has a master's degree and NP certification, and McNamara, Almas, and Fitzsimmons do not.  In arguments scattered throughout her brief, Plaintiff contends that a master's degree and advanced certification were a "prerequisite" for the CMN-II position, *see* Pl.'s Mem. of Law at 13, and that these credentials rendered Plaintiff "more qualified to be a CMN-II than any other candidate," *id.* at 28.  *See also id.* at 7, 24.  From these assertions, Plaintiff urges the Court to infer pretext.  The Court rejects this argument.  If a master's degree and advanced certification were part of the minimal qualifications for the CMN-II position, Plaintiff would have a reasonable argument that the fact that she possessed these qualifications— and the individuals who were promoted did not—supports a finding of pretext.  The flaw in

Plaintiff's argument is that an advanced degree and advanced certification were *not* required

qualifications.

### 1. A Master's Degree and Advanced Certification Were Not Minimal Qualifications for the CMN-II Position

Defendants argue that the CMN-II position required only a bachelor's degree and RN

license. *See* Defs.' Mem. of Law at 7; Defs.' Reply Mem. of Law at 5-6. Defendants point to

the Medical Division's official job description, which listed an RN license and a bachelor's

degree (or equivalent) as the only "qualification requirements" for the CMN-I and CMN-II

positions. Dandrige Decl. Ex. E at CMN000512. Plaintiff points to another part of the job

description, which states that CMN-IIs "dispense[] and make[] adjustments on medication

prescribed for members," and a footnote in the job description that states, "Nurses who dispense

and make modifications in medication . . . must possess a Master of Science in Nursing" and

advanced certifications. Dandrige Decl. Ex. E at CMN000512.

Admittedly, the job description is ambiguous. But the remainder of the record makes

clear that a master's degree and advanced certification are not required to "dispense[] and make[]

adjustments on medication," *id.*, and, therefore, not required for the CMN-II position. To be

sure, Plaintiff's documentary evidence shows that advanced degrees and certifications enable

nurses to dispense, adjust, and even prescribe medication in some circumstances. *See* Simmons

Decl. ¶ 6; *id.* Ex. 9. Plaintiff repeatedly conceded in her deposition, however, that nurses without

advanced degrees or certifications may also dispense and adjust medication *with a doctor's

order*. *See* Simmons Dep. 40:5-7, 59:2-13, 60:16-17, 61:21-23, 62:7-10. Nothing in the record

indicates that a CMN-II would need to prescribe medication in the absence of a doctor's order, as

it is undisputed that CMN-IIs work under the direct supervision of Medical Division doctors.

*See* Pl.'s Mem. of Law at 11; Defs.' 56.1 Stmt. ¶ 5; Pl.'s 56.1 Resp. ¶¶ 5, 20; McGinn Dep.

15:23-16:11. Thus, a master's degree and advanced certification were not required for promotion.[14] *Mines v. City of New York*, No. 11-CV-7886, 2013 WL 5904067, at *6 (S.D.N.Y. Nov. 4, 2013).

That no CMN-I or CMN-II, other than Plaintiff, has ever held a master's degree or advanced certification further confirms this proposition. *See Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 81 (2d Cir. 2009) ("[E]ven if those qualifications could be interpreted as minimum qualifications *from the job posting*, a rational jury could nonetheless conclude that [the defendant] did not *in practice* consider them part of the basic eligibility for the position at issue." (emphasis added) (citation and internal quotation marks omitted)). Nothing in the record indicates that Gallo, McNamara, Almas, or Fitzsimmons were unable to do their jobs because they lacked advanced degrees or certifications.

Based on this record, no reasonable jury could conclude that a master's degree and advanced certification were necessary to be minimally qualified for the CMN-II position.[15]

### 2. Defendants Were Entitled to Rely on Qualifications Other than Education

Having failed to establish that her credentials were part of the job's threshold qualifications, Plaintiff's case bottoms out to an argument that the credentials somehow made her more qualified than McNamara, Almas, and Fitzsimmons. The Second Circuit has ruled on this argument numerous times:

---

[14]  Plaintiff further argues that the CMN-II position involved supervisory responsibilities, a role that, according to Plaintiff, requires a master's degree and advanced certification. *See* Pl.'s Mem. of Law at 4-6, 24, 28; Pl.'s 56.1 Resp. ¶ 10. This argument fails. While an advanced certification *may* make a nurse more skilled at supervision, *see* Simmons Decl. ¶ 6, neither common sense nor anything in the record indicates that RNs are unable or unqualified to supervise other RNs.

[15]  As the Court has noted, for purposes of establishing Plaintiff's prima facie case, it is undisputed that she was minimally qualified to be promoted, as she possessed both a bachelor's degree and master's degree, along with RN and NP licenses. *See* Defs.' 56.1 Stmt. ¶¶ 9, 96-97; Pl.'s 56.1 Resp. ¶¶ 9, 96-97. Plaintiff's arguments on this point are relevant only to her burden to establish pretext.

When a plaintiff seeks to prevent summary judgment on the strength of a discrepancy in qualifications ignored by an employer, that discrepancy must bear the entire burden of allowing a reasonable trier of fact to not only conclude the employer's explanation was pretextual, but that the pretext served to mask unlawful discrimination. In effect, the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.

*Byrnie*, 243 F.3d at 103; *see also Moy v. Perez*, No. 16-3588-CV, 2017 WL 4534777, at *3 (2d Cir. Oct. 11, 2017) ("In view of undisputed record evidence showing that Lau was more qualified than Moy in numerous respects, the meager list of qualifications for which Moy was superior cannot satisfy his burden to establish pretext.").

Education was one among several factors that Defendants were entitled to weigh in reaching a promotion decision. To be sure, Plaintiff has offered well-founded reasons that her advanced degree and certification made her suitable for promotion. For example, her NP license provided training in nurse supervision, a component of CMN-IIs' duties. *See* Defs.' 56.1 Stmt. ¶ 10; Pl.'s 56.1 Resp. ¶ 10; Simmons Decl. ¶ 6. Nevertheless, Plaintiff's credentials are not so superior to those of McNamara, Almas, and Fitzsimmons that the Court can conclude that "no reasonable person, in the exercise of impartial judgment, could have chosen" them over Plaintiff for the promotion. *Byrnie*, 243 F.2d at 103. Defendants were entitled to weigh the qualifications they saw in McNamara, Almas, and Fitzsimmons more heavily than they weighed Simmons' education. *See Scaria v. Rubin,* 117 F.3d 652, 654-55 (2d Cir. 1997) ("As between experience and education, the [employer] elected to value the first over the second in filling the job, and there is nothing to show that this value judgment was pretextual."); *Sattar*, 129 F. Supp. 3d at 139 ("[C]ourts afford employers a great deal of discretion in assessing the credentials and qualifications of applicants and in determining the criteria for positions." (internal quotation marks omitted)); *Witkowich v. Gonzales*, 541 F. Supp. 2d 572, 582 (S.D.N.Y. 2008) ("An

employer has the right to decide how it will value the various qualifications different candidates bring to the table.").

### E.     Considering the Record as a Whole

"A plaintiff's evidence at the third step of the *McDonnell Douglas* analysis must be viewed as a whole rather than in a piecemeal fashion. . . . No one piece of evidence need be sufficient, standing alone, to permit a rational finder of fact to infer that defendant's employment decision was more likely than not motivated in part by discrimination." *Walsh v. New York City Hous. Auth.*, 828 F.3d 70, 76 (2d Cir. 2016) (footnote and citations omitted). "[J]ust because the discrepancy between [plaintiff and the successful applicant's] qualifications does not on its own have the strength to create a material issue of fact, that does not mean the discrepancy is stripped of all probative value." *Id.* (second alteration in original) (quoting *Byrnie*, 243 F.3d at 103).

Viewing the record as a whole does not change the Court's analysis. Plaintiff's educational credentials, combined with her NYPD citations, rotations throughout numerous Medical Division locations, and limited record of leadership and initiative, do not render her so objectively superior to McNamara, Almas, or Fitzsimmons that no reasonable impartial person could have chosen them for promotion.

For all these reasons, the Court grants summary judgment for Defendants on Plaintiff's racial discrimination claims.

## III.     Defendants Are Entitled to Summary Judgment on Plaintiff's Retaliation Claims

### A.     Applicable Law

Retaliation is actionable under Title VII and §§ 1983 and 1981. *Vega*, 801 F.3d at 80. Retaliation claims under all three statutes are evaluated under the *McDonnell Douglas* three-step burden-shifting analysis. *See Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (citing *Jute v.*

*Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)). First, the plaintiff must establish a prima facie case. *Id.* "If the plaintiff sustains this initial burden, a presumption of retaliation arises. The defendant must then articulate a legitimate, non-retaliatory reason for the adverse employment action." *Id.* (citations and internal quotation marks omitted). Upon such a showing, "the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action. A plaintiff can sustain this burden by proving that 'a retaliatory motive played a part in the adverse employment actions even if it was not the sole cause [of the actions].'" *Id.* (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)).

### B.     Plaintiff Establishes a Prima Facie Case of Retaliation

A plaintiff establishes a prima facie case of retaliation by showing: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Id.* at 164. "The plaintiff's burden in this regard is *de minimis*." *Id.* Defendants dispute only the fourth prong of this test.[16] *See* Defs.' Mem. of Law at 14.

As to the fourth prong, "proof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through

---

[16]     Although it does not change the Court's analysis, the Court notes that there is a genuine dispute of fact as to whether Plaintiff engaged in protected activity. Plaintiff testified that she complained about racial discrimination in four NYSNA meetings. *See* Simmons Dep. 21:8-22:5, 30:12-33:4. McGinn and Donnelly testified that Plaintiff complained about the promotion process only in general terms, without mentioning race or discrimination. *See* Donnelly Dep. 71:7-12; McGinn Dep. 30:12-20. "[G]eneral allegations of mistreatment . . . are not 'protected' under Title VII." *Plahutnik v. Daikin Am., Inc.*, 912 F. Supp. 2d 96, 108 (S.D.N.Y. 2012) (citing *Drumm v. SUNY Geneseo Coll.*, 486 F. App'x 912, 913-14 (2d Cir. 2012), and *Benn v. City of New York*, 482 F. App'x 637, 638-39 (2d Cir. 2012)). Nevertheless, the Second Circuit has instructed courts to consider only the plaintiff's evidence in determining whether a prima facie case exists. *See Graham v. Long Island R.R.*, 230 F.3d 34, 41-42 (2d Cir. 2000) ("[S]ince the burden at this stage of the *McDonnell Douglas* analysis rests solely on [plaintiff], it was premature to consider [defendant's] evidence. . . . [W]e think only [plaintiff's] evidence should be considered when deciding whether plaintiff has met his initial burden."). Applying this standard, for purposes of Defendants' motion for summary judgment, Plaintiff has raised an inference that she engaged in a protected activity.

other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Hicks*, 593 F.3d at 170 (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)). "[T]emporal proximity," standing alone, can show causation "for the purposes of establishing a prima facie case," even if it is ultimately insufficient to defeat summary judgment. *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 932 (2d Cir. 2010) (per curiam).

Plaintiff alleges that she complained about racial discrimination during meetings in January, April, August, and September 2014. *See* Pl.'s Mem. of Law at 32; Defs.' 56.1 Stmt. ¶¶ 61, 67, 69; Pl.'s 56.1 Resp. ¶¶ 61, 67, 69; Simmons Dep. 21:8-22:5, 30:12-33:4. Plaintiff further alleges that Defendants retaliated against her by promoting Fitzsimmons in late 2014 and not her. *See* Am. Compl. ¶¶ 17-20; Pl.'s Mem. of Law at 33-34. Plaintiff's sole basis for showing causation is the temporal proximity between her complaints and Fitzsimmons' promotion.[17] *See* Pl.'s Mem. of Law at 34. This is sufficient to establish a prima facie case. *See El Sayed*, 627 F.3d at 932.

### C.     Defendants Have Offered Legitimate, Non-Retaliatory Reasons for the Failure to Promote Plaintiff, and Plaintiff Cannot Show that the Reasons Are Pretextual

To rebut the presumption created by Plaintiff's prima facie case, Defendants must proffer "a legitimate, non-retaliatory reason for the adverse employment action." *Hicks*, 593 F.3d at 170. If Defendants do so, Plaintiff must come forward with evidence to show that "retaliation

---

[17]     The parties dispute the exact timing of Fitzsimmons' promotion. Defendants claim that, for purposes of Plaintiff's retaliation claim, Fitzsimmons' promotion took place when McGinn recommended her in July 2014. *See* Defs.' Mem. of Law at 14-16. In Defendants' view, the promotion preceded, and could not have been retaliation for, Plaintiff's August and September 2014 discrimination complaints. *See id.* Plaintiff claims that Fitzsimmons' promotion took place only when it was officially approved by the Police Commissioner, in November 2014. Pl.'s Mem. of Law at 33. Even if Defendants were correct, Plaintiff might be able to show temporal proximity based on her January and April 2014 complaints.

was a substantial reason for the adverse employment action" or that "a retaliatory motive played a part in the adverse employment actions even if it was not [their] sole cause." *Id.* As to "temporal proximity," it "may give rise to an inference of retaliation for the purposes of establishing a prima facie case. . . but without more, such temporal proximity is insufficient to satisfy [a plaintiff's] burden to bring forward some evidence of pretext." *El Sayed*, 627 F.3d at 932; *see also Abrams*, 764 F.3d at 255 (affirming dismissal of a retaliation claim because the plaintiff "alleged nothing beyond temporal proximity to establish pretext").

Defendants' non-retaliatory reasons for not selecting Plaintiff for promotion are the same as their reasons under Plaintiff's discrimination claim. Plaintiff received mediocre performance reviews, received negative feedback from supervisors, and failed to demonstrate leadership and initiative commensurate with the individuals who were promoted.

Plaintiff raises no argument as to pretext other than "the short temporal proximity between Plaintiff's last direct complaint and the adverse employment action of being passed over for promotion." Pl.'s Mem. of Law at 34. This is insufficient to establish pretext. And as the Court has discussed, nothing else in the record establishes that Defendants' explanations for their promotion decisions were pretextual.

For all these reasons, the Court grants summary judgment for Defendants on Plaintiff's retaliation claims.[18]

---

[18]    As a last-ditch maneuver, Plaintiff claims that Defendants have, to this date, kept CMN-II positions vacant in retaliation for Plaintiff's discrimination complaints. *See* Pl.'s Mem. of Law at 33. This argument does not change the Court's decision. First, Plaintiff raised this argument for the first time in her opposition brief, as it is not mentioned in her Amended Complaint. Further, Plaintiff cites no part of the record to support this assertion, nor does Plaintiff cite any case for the proposition that the failure to fill a vacant position constitutes an adverse employment action. Even if the unfilled vacancy could help Plaintiff establish a prima facie case, Defendants' non-retaliatory reasons for failing to promote Plaintiff would still apply: Defendants concluded that Plaintiff's evaluations, supervisor feedback, and record of leadership rendered her less suitable for promotion than the selected individuals.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED as to all claims. Plaintiff's Amended Complaint is DISMISSED with prejudice. The Clerk of Court is respectfully directed to terminate all open motions and to close the case.

**SO ORDERED.**

**Date: December 13, 2017**
      **New York, New York**

**VALERIE CAPRONI**
**United States District Judge**